## RICHARD BLUMENTHAL, ATTORNEY GENERAL *v.* KIMBER MANUFACTURING, INC., ET AL.[1]

Superior Court          Judicial District of          File No. CV010806184S
                        Hartford

Memorandum filed December 5, 2001

*Roger F. Reynolds,* assistant attorney general, with whom was *Richard Blumenthal,* attorney general, for the plaintiff.

*Pepe & Hazard,* for the defendants.

I

## INTRODUCTION

HON. SAMUEL FREED, JUDGE TRIAL REFEREE. This proceeding is part of an antitrust case initiated by the plaintiff, Richard Blumenthal, attorney general, against the defendant firearms manufacturers, alleging the latter's participation in a boycott against Smith and Wesson, also a firearms manufacturer. The defendants have initiated the present action, which seeks to move this court for a protective order prohibiting the plaintiff

---

[1] An appeal to the Appellate Court by the plaintiff was filed on October 10, 2001; Appellate Court Docket No. AC 22381.

from using or disseminating a certain document (document #474), since that document has been designated by this court as bearing the attorney-client privilege.

The document, which is the subject of this motion, was one of six documents sent to the plaintiff's attorney as part of an agreement of nonprivilege. The document in question, however, was inadvertently included by the clerk employed by the defendants' local attorney. The plaintiff claims that this inclusion constitutes a waiver by the defendants of the attorney-client privilege.

It should be noted that the plaintiff's attorney initially notified the defendants' attorney of the error; the former refused a request to return the document at issue and threatened to disseminate the contents to other law enforcement agencies.

Although there was no testimony presented by either side at the hearing on this motion, the court received affidavits of the facts alleged. There is no dispute or claim that the release of document #474 was done by a clerk mistakenly and in violation of the instructions given to her by the defendants' attorney, her employer.

The issue before this court, therefore, is whether an inadvertent disclosure of a privileged document to a party to litigation constitutes a waiver or loss of the attorney-client privilege.

II

RELEVANT CASE LAW

Both sides have cited to the court a myriad of cases from other jurisdictions along with Connecticut cases on the subject.

There is a significant body of case law on this issue in other jurisdictions evolving into three different views on the topic. The first view recognizes the sanctity of the attorney-client privilege and mandates loss or waiver of that privilege only when there is intent to waive the

privilege. This view is derived from the long established general rule of waiver, which occurs only when the party waiving a right does so knowingly and intentionally. *Hydraflow, Inc.* v. *Enidine Inc.*, 145 F.R.D. 626, 636 (W.D.N.Y. 1993), aff'd in part and rev'd in part, 907 F. Sup. 639 (W.D.N.Y. 1995); *Mulay Plastics, Inc.* v. *Grand Trunk Western R. Co.*, 102 F.R.D. 130 (N.D. Ill.), appeal dismissed, 742 F.2d 369 (7th Cir.), cert. denied, 470 U.S. 1037, 105 S. Ct. 1409, 84 L. Ed. 2d 798 (1984).

Another line of cases makes an exception to the "knowing and intentional rule" when the inadvertent disclosure is made with "extreme carelessness." See *Starway* v. *Independent School District No. 625*, 187 F.R.D. 595 (D. Minn. 1999); *SCM Corp.* v. *Xerox Corp.*, 70 F.R.D. 508 (D. Conn. 1976), appeal dismissed, 534 F.2d 1031 (2d Cir. 1976).

Still another view espoused by some courts is what might be termed the strict or harsh rule that any disclosure by the privilege holder waives the privilege. *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989); *International Digital Systems Corp.* v. *Digital Equipment Corp.*, 120 F.R.D. 445, 449–50 (D. Mass. 1988); see also note, "Attorney-Client Privilege: The Necessity of Intent to Waive the Privilege In Inadvertent Disclosure Cases," 18 Pac. L.J. 59, 94 (1986) (concludes that "[t]he importance of the attorney-client privilege demands that the privilege not be waived unless the client has intended to waive the privilege").

Examination of Connecticut law on the subject requires this court to consider three applicable cases.

The plaintiff has cited *State* v. *Vennard*, 159 Conn. 385, 406–407, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971), in support of its claim that even an inadvertent disclosure forfeits the privilege. *Vennard*, however, is inapposite, because that decision involved the overhearing of a conversation

between the defendant and his attorney in a criminal case. The communication at issue in *Vennard* was overheard by a police officer. Id., 406.

The present case is distinguishable in that here, it was not a party to the action to whom the disclosure was made, and the disclosure was not intended to be made to anyone.

Two cases dealing with Connecticut law on inadvertent disclosure have been reported. The first, previously cited by this court, *SCM Corp.* v. *Xerox Corp.*, supra, 70 F.R.D. 519, held that an accidental disclosure would uphold the privilege, but a repetition of the error "would not be easily excused."

Another case on point is *Barnes/Science Associates Ltd. Partnership* v. *Edo Corp.*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV 890027764S (June 7, 1990) (*Fuller, J.*) (*Barnes/Science*).

In *Barnes/Science*, documents were accidentally and unintentionally delivered to opposing counsel. Id. The error there was the combination of privileged documents with nonprivileged documents by the plaintiff's attorney, or his legal assistant, as has happened in the present case. Copies of the privileged documents were distributed to other persons involved in the litigation. The court discussed at length the diversity of opinion by courts on the question of waiver of the attorney-client privilege and held that the privilege in *Barnes/Science* had not been waived. Id. The court noted also that the turning over of the documents did not occur in a cavalier or careless manner. Id.

### III

### CONCLUSION AND ORDER

This court has concluded that waiver can occur only if there is knowledge of the existence of the right and

intention to relinquish it. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 565, 316 A.2d 394 (1972). Further, the court finds in the present case that the attorney-client privilege is sacrosanct and cannot be waived without a knowing and intentional act by the party waiving it.

Even if the degree of carelessness should be weighed by the court, the present case is not one where this court could find that the defendants' conduct has been sufficiently deficient to warrant an extinguishment of the privilege. The error here was comparable to that of a scrivener. Forfeiture of the privilege would be wholly disproportionate to that conduct. The interests of justice would not be served in such a forfeiture.

The plaintiff, his agents and employees, are directed to return to the defendants, document #474 and any copies or computer records thereof, including any summaries or written references to that document.

The plaintiff, his agents and employees, are, in addition, ordered to refrain from further use, dissemination, or disclosure of document #474 or of the information already gleaned from that document.